Good morning. You may please the court. My name is Holly Chong, student counsel, and I represent Sazar Dent. I'm here supervised by Anne Trom, who's here today. Mr. Dent, who was adopted as a child by a U.S. citizen, was unlawfully removed from this country despite his good faith citizenship claim. Mr. Dent has three key claims for relief. First, that he is entitled to citizenship as a matter of law based on his equal protection claim. Excuse me, counsel. I have a couple of particular questions I need to know the answers to. First, I'm wondering whether we need to reach any constitutional questions about either due process or equal protection in light of this statutory duty under 8 U.S.C. 1229 A.C. 2B, the overall records and documents pertaining to the alien's admission of presence. That statute, our understanding is that that statute applies to aliens who are trying to obtain lawful admission to the ---- Well, let me put this another way. If we agreed with you that the documents should have been disclosed and remanded on that basis, we would not need to reach any constitutional questions. Is that correct? Regarding the due process, if we could get a remand, yes. However, we would ask that this Court consider the equal protection claim as well. I understand. I'm just talking as a matter of what our options were. If we were to remand based upon the failure to disclose the documents, would we be required to reach those questions? We could, I expect. But I know you want us to. But my question is, are we required to? Is that similar to your question? Yes. No, you would not be required to do so. However, Mr. Dent would benefit from an automatic citizenship determination under the equal protection claim. You have raised this statute, and it looks to me as though the statute says if it's in the A file, you have to give it to the alien. Yes, Your Honor. Is that what it means? We interpreted that to mean that, yes. And that was not done, right? Correct. As I understand it, in the request for judicial notice, it's a request for judicial notice of documents that were in the A file and should have been turned over in warrants. Is that right? Correct. Therefore, we ask that this be the case. And you would be entitled to victory on that basis. Is that right? Yes. Now, regarding Mr. Dent's own case. And let's see. Why wouldn't the doctrine of constitutional avoidance require us then to avoid deciding the constitutional issues, since you would be entitled to win the case without them? Well, the due process issue and the fact that you would give Mr. Dent a remand would only give him a remand to determine if he naturalized under the A file or that the government impeded his naturalization and made him so his equity is stopped. But the equal protection claims. If he did turn out to naturalize, then we would never need to decide and no one would ever have to decide whether the equal protection clause required that he be treated as naturalized. Isn't that right? Correct. But equal protection gets Mr. Dent automatic citizenship as a matter of law and would resolve the issue sooner than a remand to district court to determine if he was a citizen under the A file. Therefore, we ask that this Court consider the equal protection argument and that the INS regulations in this case actually unconstitutionally discriminated against similarly situated adopted children. Before I get to the equal protection, if I read this correctly, and I can't believe I did, so you educate me on my error, it looked like Mom applied for his naturalization in 1981. It was before he was 18. And her application wasn't denied until 2008, 27 years later. Is that true? That is correct. Okay. So the story actually begins back in 1978. Can I ask you something about the equal protection? Yes. When I was reading this, I was trying to think of if rational basis review applies, what rational basis Congress could have. And it put me in mind of the Indian Child Welfare Act, where there's a policy that Congress has expressed at the behest of Indian tribes to facilitate children retaining cultural ties to their blood heritage. And I was thinking, well, maybe Congress thinks that some Americans who adopt foreign leave it to the child, whether to become a U.S. citizen, or whether the child wants to sever his connection with his native land, and maybe Congress wants to facilitate the children preserving cultural ties to their blood heritage, just like in the Indian Child Welfare Act. Why wouldn't that be a rational basis? Well, here in this case, the agency actually misinterpreted the statute and imposed onerous regulations on the adopted children of U.S. citizens. Therefore, rational basis doesn't apply. In Cervin-Espinosa, this Court held that a less forgiving standard than rational basis applies when an agency misinterprets a statute. But if it did, would you respond to Judge Kleinfeld's question on whether that would be a rational basis? If Congress did indeed intend to bring about this discrimination, then the naturalization process requires both the adult and the parent to show up for naturalization. And the adult would bring about the naturalization of the child, whether the child wanted to be naturalized or not. And so if the adult could make it through the onerous seven-step process, in this case an application, then an examination, a petition, then another hearing, questionnaire, two sworn witness affidavits and an oath, then the child would be naturalized, whether the child wanted to be or not. So I don't see how that could be a rational reason for Congress to pass this statute and discriminate in that way. Now, going back to the regulations and actually how the agency imposed an onerous process, seven-step process, on the adopted children of U.S. citizens while granting automatic citizenship to the adopted children of naturalizing parents, the fact that Congress in passing this law explicitly said, and I quote, that this is to provide for the expeditious naturalization of adopted children, the IMS did not do that in this case. And if you look on page four of our supplemental motion, the AAO order, it shows that in this case the expeditious naturalization was not being done. Roma Dent filed her application, as Judge Kleinfeld pointed out, in December of 1981. And the AAO decision indicates that an interview was not scheduled until July of 1983. Over a year and a half, and this was the first step in the seven-step process, so it was not expeditious naturalization of adopted children. And this Court held in Servan-Espinosa that when an agency misinterprets a statute like this, resulting in an unconstitutional discrimination such in this case, the remedy is equal treatment, and so for Mr. Dent would be automatic citizenship. Now, there's another option in this case which would allow for an individualized determination. You can invalidate the regulations in this case and determine if Roma Dent met the requirements under the statute. And Roma Dent did file an application, and so we ask that this Court hold in the alternative that Roma Dent met the petitioning for naturalization language that's in the statute. She filed the application, she took an affirmative step that identified the child, the child's whereabouts, the child's eligibility for naturalization. Additional process is unwarranted, duplicative, unjustified. And Mr. Dent would be a citizen under the 1986 laws that only required one application and under the 2001 laws that grant automatic citizenship. I'm not sure I understand. You know the law is we can't naturalize anyone. Under this Court held in Washope and then in Mustanich that when there are constitutional violations, that this Court can provide citizenship as an equitable remedy. Therefore, we ask that this Court follow. When was that? Washope was 1993, Mustanich was 2008. So we ask that this Court follow that case law and grant Mr. Dent citizenship as a matter of law. And these laws and regulations have not been considered by this Court. And that's something I wanted to point out. The cases cited by the government, Duran-Hirado and Crider, two unpublished cases from this Court, and then Coliani, a Second Circuit case, those all dealt with the certificate of citizenship laws. The one-step process under the 1986 laws that I mentioned did not deal with this owner's process. And this is a rare case then. This Court hears a lot of immigration cases, so Mr. Dent has a very rare case indeed. Now, regardless of how this Court decides the due process issue today, and if you decide it on the statute, we ask that this Court still decide the aggravated felony issue in this case, because Mr. Dent has been detained for nearly two years under the INA, it's illegal to be detaining a U.S. citizen under the INA. So if he is a citizen, we need to get this resolved as soon as possible. But if he's ineligible for bond right now, and so we ask that the issue be decided, the government did not defend on this issue, so we ask that this Court hold the third-degree escape is not an aggravated felony. And regarding due process, if this Court decides that the statute does not apply, we still have a very strong due process claim in this case, because Mr. Dent was impeded from naturalizing in this case. If you look at the AAO order, it shows that, first when I mentioned that it took at least a year and a half to get his first application considered, on page 4 of our supplemental motion, the attached AAO at J and Sup 4, shows that Mr. Dent was impeded from naturalizing. There are at least seven letters and notices that we have never seen in this case. As I mentioned, the first interview took a year and a half to act. Roma Dent asked for a reschedule. She got that to March of 1984. Then there's an inquiry. They don't say when, they don't say why. An INS letter responding, asking for more information, Mr. Dent's AFAL number, Mr. Dent's name. Excuse me, Counsel, I noticed the long pause in questions. Anytime you feel like reserving time for rebuttal, go ahead and do it. And if you don't feel like it, don't. Thank you, Your Honor. Just getting through the AAO order really quick, I just want to point out that Roma Dent was diligently responding with the agency. She was not absent. So we need to see this file. If the court decides the statute does not apply, then we need to determine what happened here. Because after the last correspondence, the agency did not schedule the next interview. For another year and a half. And that was three months after Mr. Dent reached out. And he showed up, completed an application petition according to that, to the AAO order. But we argue that there are no notices from that either. And we need to see those notices as well for the 1986 application he filed. And despite Roma Dent's diligence, the agency impeded Mr. Dent from naturalizing. And under Mustanich, that kind of government action or inaction resulting in a failure to naturalize is an equitable estoppel issue. And Mr. Dent should be granted citizenship as a remedy. And I will save my remaining time for rebuttal.  Thank you. May it please the Court. I'm Paul Fiorino for the Respondent. By statute, Mr. Dent was required to complete the naturalization process by the age of 18. He did not. He doesn't contend that he did. Counsel, is it correct that the agency was required to turn over the A file by statute? Yes. No. No, as we read the statute, the statute requires the agency to turn over documents that are relevant to the alien's lawful presence in the United States. He was a lawful permanent resident. He was charged as being a lawful permanent resident. And he admitted that in the hearing. Well, it says here, in meeting the burden of proof, the alien shall have access to the alien's visa or other entry document, if any. And any other records and documents not considered by the Attorney General to be confidential pertaining to the alien's admission or presence in the United States. Right offhand, I can't think of anything broader than pertaining to the alien's admission or presence. Why wouldn't that require the agency to turn over the A file? Because admissions and presence is not citizenship and naturalization. Well, sure it is. If you ask me, what justifies your presence in the United States saying, well, I was born here, I'm a citizen, is number one on the list. Well, it gets more complicated than that, Your Honor. If you're a citizen some other way, I would think that would be number one on the list. Because in front of the immigration judge, he was charged with being an alien lawful permanent resident. He admitted that. I don't see that that's final and definitive. I once had a client admit in a car accident case on the witness stand that he was negligent. But the jury disagreed with my client and decided he wasn't. That can happen. Certainly. But our position with respect to that statute is that the immigration judge did not. Well, let me put the question out of the way. Let's say you got in your files the fact that he was naturalized. The government knows it. He doesn't know it. Are you really saying that you shouldn't turn that document over to him when he says, in ignorance, I agree that I'm an LPR and not a citizen? And you're looking at the document that says he's a citizen and you say, that's it? Sorry. You don't have to turn it on? That's not the facts of this case. I think that's just what you said, though, that once he admits that he's a citizen of a foreign country, you don't have to give him documents to prove the contrary, that he's a citizen of the U.S. I think that's what you just said, isn't it? Because the immigration judge and the DHS did not have in their possession any documents that proves he's a citizen of the United States. It only has to pertain. It doesn't have to prove it. Well, I think your question was about proof. No, I asked you why, with this broad language pertaining, the government didn't have to turn over the A file. Again, our position with respect to that statute is that it pertains to lawful presence. And as we read that, it would not have required the immigration judge or the DHS to turn over. Tell me how to read it, then. Well, lawful presence of the United States talks about whether you're lawfully admitted in the United States. It says admission or presence. That's what it says. Yes. And we think admissions and presence is distinct. Well, that's a matter of statutory construction. We'll get to that. But in order to resolve that question, I know you oppose the motion for judicial notice, but don't you think we could notice these documents at least to the extent of noting that they do exist in the A file without, you know, referring to the substance or trying to determine the merits? Yes. I mean, it's impossible for the Court to ignore the fact that they exist for the limited purpose of knowing that they do exist. But also, if the Court is going to consider those documents, we think it's useful to consider in the context of the due process argument whether or not there's any prejudice, because in that ---- Well, we don't think that they do. Those documents show that he attempted to naturalize twice, first through the adoption of his mother, and as the AAO decision that the petitioners submitted last week reflects, he failed to complete that process. Second, knowing that he failed to complete that process, he went in essentially the next day and attempted to complete it. How does he know he failed to complete the process? He didn't get turned down for 27 years. Well, no, Your Honor. He went in after he turned 18. See, when he turned 18, his claim is moot at that point. Under the statute, he's required to complete the process of naturalization by the age of 18. But that never told him you lose until 27 years later. Because he never went in to complete the process, Your Honor. No. He never attended any of the ---- Who knows? Maybe he's entitled to some kind of tolling. But anyway, what I'm getting at is this. I know you also opposed in your brief any transfer to the district court in the 1252B, you know, for a citizenship determination because there seem to be factual issues. Are you still opposed to that? Well, yes, we think so because, number one, we think that there's no factual issues on the record. And, number two, we believe that the under statute, if he is currently in removal proceedings as he is now, that the proper venue to resolve these issues is in removal proceedings. And we cite a case on page 41 of our brief, I believe, to that effect. It's a Seventh Circuit case. So that's why we think this case should remain in removal proceedings. Page 41, you say the proper form is the removal proceedings because he's in proceedings now? By statute. Yeah, he's currently in removal proceedings. He's been found removable on two bases, one being his escape and one being criminal drug possession. To get back to the issue on disclosure, and I know I was giving you a harsh hypothetical, but isn't that precisely what your position is? Because I think what you're saying is if you have a ---- if the person admits he's an LPR, you don't have a duty to disclose anything. Well, I think ---- Let me finish. That would include, if that's a broad principle, the fact that you have in your hand proof of naturalization. I know that's not this case, but we have to consider the implications of what we're saying. So why isn't that ---- why doesn't that hypothetical work under your theory? Because if the ---- if it doesn't work, first of all, it would never happen. I don't think that the ---- That's why we call it hypothetical. Yes. You mean it would never happen? That's like ---- I mean, I'm just saying somewhere, somehow, if your position is he said he's an LPR, therefore, we don't have to disclose anything, then that would mean you don't have to disclose proof of naturalization, which seems odd to me. So I'm just ---- that's why I'm asking the question. If I understood your answers to Judge Kleinfeld correctly. Well, if I didn't, then in light ---- Well, we're talking about that statute. We're talking about, I think it's 240C2B. And the question posed to us ---- Are you talking about 1229AC? Well, we're ---- one of those is INA, one of those is United States Code. It's the statute that the Petitioner is saying we are required to turn over. AC2B. You see, the problem with the position, I don't know why you ---- the position you're taking on the statute, is it really forces us, then, to the due process argument, regardless of what the statute provides, right? No, even if you're correct on the statutory interpretation, then we have to say, well, regardless of the statute, does due process still require the agency to turn these over? What's your answer to that? You're forcing us to confront that issue, aren't you? Well, essentially, yes. Petitioners, and the answer you want is no. Even if you've got proof of naturalization, you don't have to turn it over. Would it be okay for the services lawyer to lie to the immigration judge when he has in the undisclosed A file proof that the person was naturalized and is a citizen to say to the immigration judge, Your Honor, he is not a citizen? Well, I don't think by the statute that the ---- Would that be a denial of due process if the services lawyer lied to him? It certainly would. It certainly would. Because in the context of denial of due process, one of the showings that you have to make is prejudice. And I understand this is a difficult hypothetical here, but prejudice shows that but for the actions of the immigration judge, he would have prevailed on meeting the requirements. The meeting of requirements are the statutory requirements for citizenship before the age of 18. There's nothing in this record, either inside the record or outside the record, that he did that. And this Court has held, the Supreme Court has held, and Pangilin and other cases, that the statutory requirements are almost sacrosanct. The courts are without any jurisdiction to overlook them, to ignore them. And as this Court held in Mustanich, even erroneous advice on the part of the Department of Homeland Security is not enough to give the court license to overlook the statutory requirements for nationalization. Do we have proof here that Dent is not a naturalized citizen? Do you have proof that he's not a naturalized citizen? Do we have a finding of the BIA or something like that, that he's not a naturalized citizen? Yes, I believe the board found that he hasn't shown prima facie evidence that he is a citizen. That's a different thing. Not having shown something is different from proving the contrary. It's difficult to prove a negative. We don't have any proof that he's not a citizen. We don't have any proof that he is a citizen. But the burden is on him, as it was before the board, to show that he is a citizen. He hasn't met that burden. And for that reason, I think that the board's decision is correct and should be affirmed. If it's true that he has not met the burden, but it is also true that the service violated the statute, requiring it to turn over documents pertaining to his presence in the U.S., then why wouldn't the appropriate remedy be a remand so that after turning over the A file, the service or the IJ could determine whether he met his burden? If it was a statutory requirement, and this Court should find that the statutory requirements were not met, then it would have to go back to the board for the board to decide that. But you're really asking us to say the statutory requirements weren't met because he admitted he was an LPR. No, we're asking you to say that the statute did not require DHS to disclose his entire A file, including documents that were 20 years old and that were sitting in Arkansas about an amendment. Well, I understand the practical problems. I don't think it makes – at least I'm not faulting the agency for what happened here, even though when you say statutory violation, it may sound like something that's particularly a heinous thing. But people can inadvertently violate the statute. But there's no 20-years-old requirement. If you're saying, look, we have some documents now. Now we know about it. Why wouldn't – why shouldn't we allow the disclosure, non pro tonque, and send it back under the statute? Well, I think that as a practical matter, there's not enough reason for this Court to think that doing that would be fruitful. He hasn't shown any evidence that he completed those requirements before he reached the age of 18. You can send it back, but the Board would come to the exact same conclusion that the AAO came to twice on appeal the district director came to, that he didn't comply with the statutory retirement. I don't understand why you don't just want to do over. I mean, the whole thing is bizarre. Twenty-seven years to say no, and then sending him down this rabbit track of getting his mother's birth certificate from Kansas or someplace when the courthouse had burned down. It sounds like just a comedy of errors with potentially tragic results, I suppose. Well, we take issue with that characterization of the facts, Your Honor. The alien petitioner came here in 1981. He attempted to naturalize twice. He didn't comply with those. He never swore his oath of citizenship. He never obtained a citizenship certificate. He never naturalized. He committed he was convicted of two crimes without being a citizen and without pursuing any of his remedies until he stood on the precipice of deportation until 2008 when he said, hey, wait a minute, I'm sorry, 2005, I'm a citizen. Wait, when you say you took issue with that characterization, is it incorrect that the agency took 27 years to say no on his application? Yes. I think if you look on the record, the denial wasn't issued until 27 years later. But if you look outside the record, again, I'm on the horns of a dilemma here. If you look outside the record. So I should look outside the record because the record establishes that it's true that it took 27 years to say no? His claim was denied in 1986 after missing several appointments to complete his paperwork and complete his interview. The statutory requirements are there. He didn't meet them. So they should have said no a lot sooner. They should have said no a lot sooner, but the fact that they didn't say no any sooner doesn't enable him to meet his statutory requirements because by the time they said no, he had turned 18. The trouble is we have a fair number of these age out cases that are very difficult because this isn't the first I've seen where a petition is not acted on, but the parties are under misimpression. I don't know if that's the case here or not. I don't know. But in other cases, they have been under misimpression that aging out didn't apply if the agency was still acting on the primary petition. And we've granted relief in some of those cases. But it's a difficult problem when you have aging out and people who don't understand the regulations and the need to get a decision or to do something promptly before 18 when they're acting on an assumption that something is going to be acted on. I'm just making an observation here. It's just not a – those are difficult cases. So it's not to simply say, well, he didn't act before 18. There are other factors in some of the cases, not necessarily this one. I understand that, Your Honor. I am out of time. If I could just conclude. I gave my preparation. You're entitled to respond. With the observation that, yes, this is a difficult case and the results are unhappy for a lot of people, but the courts have been clear, the Supreme Court has been clear that the statutory requirements for naturalization as interpreted by Congress and passed by Congress are virtually sacrosanct. And the courts are without jurisdiction to circumvent those requirements. The petitioner in this case did not complete his naturalization process before reaching the age of 18. There's a lot of other issues. But in terms of prejudice, in terms of due process, he can't show any prejudice. And unless the Court has any further questions, that will conclude our presentation. Thank you, Counsel. Counsel, you reserve a couple of minutes. Your Honor, it's clear there are factual issues in this case, and the equal protection due process claims are linked. The agency made naturalization difficult in this case, and they were not expediting. We ask that this Court invalidate the regulations. And if the agency process is considered invalid, there's no factual issues to consider in remand. Mr. Dent is a citizen as a matter of law. So we would ask that this Court remand, requiring the full A file, continued stave removal, and appoint counsel if this Court decides to remand. But if you decide the equal protection decision, then we would ask that Mr. Dent be granted citizenship as a matter of law. Are there any independent bases on which to consider the detention aside from granting complete relief? In other words, do you have a bail application that could be reinstated if we were to determine that escape is not a crime of violence? Yes. And we would ask for that that be determined, that the escape is not a crime of violence. Right. But I mean, I know obviously we could do that in the context of an opinion. I'm just asking procedurally, is there some mechanism that you foresee that one could do that outside the context of a decision on the merits? I'm not sure that there would be. I mean, Mr. Dent is ineligible for bond with an aggravated felony determination on the record. And so we would need that to be expunged before he could be eligible for bond. And we would ask that then he be considered for cancellation of removal because he's not an aggravated felon. And this issue needs to be decided as soon as possible because it is illegal to detain citizens under the INA. But this court has seen citizens detained and even removed. Manassian in 2005 was a U.S. citizen, and he was detained and removed illegally under the INA. And counsel was talking about Mr. Dent already turning 18. I just want to point out in the AAO decision on page 4, Mr. Dent was called in on the 1981 application after he had already turned 18. And they processed both his application and petition on the same day, showing that they probably realized that they messed up in this case and they were trying to do something. But Roma Dent was not given that kind of expedited process. So we ask that this court consider that in this case. Thank you, counsel. Thank you. Dent v. Holder is submitted. We are adjourned for the morning.
judges: Kleinfeld, Tashima, Thomas